IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DEMARI DILLON-MARLIN and ERIK DILLON,<br><br>Plaintiffs,<br><br>v.<br><br>JOSH M. LEE; CLAYTON FARNES; MATTHEW BARTLETT; ADAM PAGE; TIFFANY PARKER; NICHOLAS RENFRO; JASON SILLS; EASTON STORY, in their individual and official capacities; and UNIFIED POLICE DEPARTMENT–GREATER SALT LAKE, an interlocal entity,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER AFFIRMING IN PART AND SETTING ASIDE IN PART MAGISTRATE JUDGE ORDER**<br><br>Case No. 2:24-cv-00206-JNP-JCB<br><br>Chief District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

On April 10, 2026, Plaintiffs Demari Dillon-Marlin and Erik Dillon moved to compel Defendants Josh M. Lee, Clayton Farnes, Matthew Bartlett, Adam Page, Tiffany Parker, Nicholas Renfro, Jason Sills, and Easton Story (collectively, the "Officer Defendants") to respond to Plaintiffs' Second Set of Discovery to each Officer. *See* ECF No. 38. Plaintiffs also moved to compel Defendant Unified Police Department of Greater Salt Lake ("UPD") to respond to Plaintiffs' Third Set of Discovery to UPD. *See id.* Magistrate Judge Bennett granted in part and denied in part the motion to compel and elected to not impose any reasonable expenses. *See* ECF No. 43. Plaintiffs filed an objection to the judge's order, pursuant to Federal Rule of Civil Procedure 72(a). *See* ECF No. 44. For the following reasons, the court AFFIRMS IN PART and SETS ASIDE IN PART the magistrate judge's order.

**BACKGROUND**

On October 20, 2019, a noise complaint was made against Plaintiffs. ECF No. 2-1 ¶ 8. Plaintiffs allege that after some of the Officer Defendants arrived at Plaintiffs' residence to respond to the noise complaint, Plaintiffs turned down their music. *Id.* ¶ 10. Plaintiffs allege, however, that the Officer Defendants nevertheless demanded that Plaintiffs exit the residence. *Id.* ¶ 11. After Plaintiffs refused to do so, several more Officer Defendants arrived at the scene and stormed the residence. *Id.* ¶¶ 12, 21. Any charges that were filed against Plaintiffs arising from the incident were eventually dropped. *Id.* ¶ 25. Plaintiffs then sued in state court, and their case was removed to this court on March 18, 2024. ECF No. 2. Plaintiffs allege that Defendants violated their rights to be free from illegal search and seizure and to equal protection. ECF No. 2-1 at 3.

Since 2024, the parties have been in discovery. On November 26, 2025, Plaintiffs served their Second Set of Discovery Requests on the Officer Defendants. These included 15 interrogatories, 29 requests for admission, and 12 requests for the production of documents ("RFPs"). *See, e.g.*, ECF No. 38-2. On the same day, Plaintiffs served their Third Set of Discovery Requests to UPD, which included 8 interrogatories and 8 requests for the production of documents. *See* ECF No. 38-1.

Defendants objected to these requests on January 1, 2026. ECF No. 47 ¶ 9. The magistrate judge held oral argument on the dispute on January 12, and a discovery dispute conference then took place on March 19. ECF Nos. 32, 37. The parties did not come to an agreement, and Plaintiffs filed a Motion to Compel. *See* ECF No. 38.

Magistrate Judge Bennett granted in part and denied in part the Motion to Compel. *See* ECF No. 43. Judge Bennett noted that "even if discovery is relevant, the court must also consider the burden of producing it compared to the benefit that the discovery will provide in terms of

resolving the issues in the case, among other factors." ECF No. 43 at 5. Judge Bennett also found that Plaintiffs had already served many discovery requests upon Defendants prior to the instant discovery dispute and that some of the prior requests overlap significantly with the current requests. *Id.* Judge Bennett also considered whether other sources or methods of discovery were better suited to uncovering the requested material in a less burdensome way. *Id.* He also declined to impose reasonable expenses pursuant to Fed. R. Civ. P. 37(a)(5)(C), finding that while the parties' arguments were not entirely persuasive, they were substantially justified. *Id.*

Plaintiffs objected to Judge Bennett's Order on June 24, 2026. *See* ECF No. 44. The court ordered Defendants to respond, and Defendants filed their response brief on July 13, 2026. *See* ECF No. 47.

## LEGAL STANDARD

When a party objects to a magistrate judge's non-dispositive ruling, district courts employ a "clearly erroneous or . . . contrary to law" standard of review. Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard applies to a magistrate judge's factual findings. *Brigham Young University v. Pfizer, Inc.*, No. 2:06-CV-890 TS BCW, 2010 WL 3855347, at *2 (D. Utah. Sept. 29, 2010). Under this deferential standard, the court will affirm the magistrate judge's order unless the court, exercising independent judgment, "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Stephens v. Alliant Techsystems Corp.*, 714 F. App'x 841, 844 (10th Cir. 2017) (unpublished). A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Hawkins v. Ghiz*, No. 2:18-cv-00466-DBB-JCB, 2021 WL 308238, at *1 (D. Utah Jan. 29, 2021) (citation omitted).

"Magistrate judges are afforded broad discretion when resolving discovery disputes."

*Thompson v. Assurant Emp. Benefits*, No. CV 07-1062, 2008 WL 11383467, at *1 (D. Kan. June 2, 2008) (citing to *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1300 (10th Cir. 1999)). "The question before the Court is not whether the undersigned would have reached the same decision as [the magistrate judge] in the first instance. Rather, the Court will affirm 'unless . . . on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *Pertile v. General Motors, LLC*, No. 15-CV-518, 2017 WL 3767780, at *9 (D. Colo. Apr. 31, 2017). "In sum, it is extremely difficult to justify alteration of the magistrate judge's [non-dispositive] actions by the district judge." *See Raytheon Co. v. Cray, Inc.*, No. 2:16-MC-898-DAK, 2017 WL 823558, at *2 (D. Utah Mar. 2, 2017) (citation omitted).

**ANALYSIS**

As stated, Judge Bennett granted in part and denied in part the Motion to Compel. Plaintiffs object to most, but not all, denials. Before the court reviews the objections to the specific denials, the court addresses some recurring and overarching arguments that Plaintiffs make.

First, Plaintiffs repeatedly object to Judge Bennett refusing to compel some of Plaintiffs' discovery requests based on rationales not argued by Defendants. These objections are unpersuasive. In ruling on the Motion to Compel, Judge Bennett's exercise of discretion was not cabined to Defendants' arguments. Rather, "[m]otions to compel invoke the discretion of the Magistrate Judge within the confines of Fed. R. Civ. P. 26(b)(1), which generally allows for broad discovery or relevant evidence, subject to concerns of proportionality to the needs of the case as reflected by various factors recited in the Rule." *Enow v. Nat'l Ass'n of Boards of Pharmacy*, No. 17-CV-01645-MSK-SKC, 2019 WL 6130747, at *4 (D. Colo. Nov. 19, 2019). Indeed, courts "should always consider Rule 26(b)(1) proportionality standards in evaluating whether discovery is appropriate." *Simmons v. Cline*, No. 20-3096-HLT-ADM, 2021 WL 1056517, at *1 (D. Kan.

Mar. 19, 2021) (noting further that the Rule 26 advisory committee's notes to the 2015 amendment state that the court has a "responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes"); *see Red Cat Holdings, Inc. v. Matus*, No. 2:25-CV-00646-TS-JCB, 2025 WL 2530731, at *4 (D. Utah Sept. 2, 2025) (noting that the requirements of Rule 26 "require the court to consider both the relevance and proportionality of Plaintiffs' discovery requests"); *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *4 (N.D. Okla. Jan. 3, 2018) (highlighting the "Court's obligation to consider" the Rule 26 factors). Judge Bennett properly considered Plaintiffs' requests under those standards.

Second, Plaintiffs argue that if Judge Bennett did find requests overbroad or disproportionate, the requests should have been limited appropriately rather than disallowed entirely. But when a request is overbroad or disproportionate, the magistrate judge is under no obligation to tailor that request to make it proper. That duty falls onto the plaintiff in the first instance. The Tenth Circuit has made that eminently clear in *Punt v. Kelly Services*: "Counsel bears the responsibility of propounding proper discovery requests, and expecting counsel to fulfill this responsibility is neither capricious nor unfair. The magistrate judge was not required to exercise his discretion to *sua sponte* fix counsel's errors and assume counsel's responsibility of framing an appropriate discovery request." 862 F.3d 1040, 1047 (10th Cir. 2017).

The court next turns to Plaintiffs' objections to the specific denials, first with respect to the discovery requests to UPD and then with respect to the discovery requests to the Officer Defendants.

## I. Discovery requests to UPD

### A. Interrogatories Nos. 12, 13, and 14

Judge Bennett denied the motion to compel responses to Interrogatories Nos. 12, 13, and

14, finding them overbroad, irrelevant, and disproportionate. ECF No. 43-1 at 1. Interrogatory No. 12 seeks body camera information from 2018 through the present, and Interrogatory No. 13 seeks information on the process for acquiring, funding, and assigning body cameras. Interrogatory No. 14 seeks demographic data from all encounters between officers and members of the public from 2019 to present.[1]

Plaintiffs argue that each is relevant. Even if the requests are assumed to be relevant, however, they are still overbroad and disproportionate, seeking expansive data from a large period of time that is far removed from the events at issue in the complaint. The court thus finds that Judge Bennett's ruling was not clearly erroneous or contrary to law.

**B. Interrogatory No. 16**

Judge Bennett denied the motion to compel a response to Interrogatory No. 16, finding it duplicative of prior requests. Plaintiff objects that it is not clear what prior request Interrogatory No. 16 duplicates.

Interrogatory No. 16 asks whether there was an internal review or investigation into the officers' conduct at issue in this case, and if so, when and by whom and to what result, and if not,

---

[1] Interrogatory No. 12 (to UPD): "Identify all UPD officers who were issued body worn cameras between 2018 and present, and state the date each officer was issued a body worn camera." ECF No. 38-1 at 5.

Interrogatory No. 13 (to UPD): "Describe the process for acquiring body worn cameras for UPD ([i.e.], how funding is obtained and approved) and how and by whom it is determined to which officers they are issued." ECF No. 38-1 at 5.

Interrogatory No. 14 (to UPD): "Identify all demographic data, including but not limited to race, collected from 2019 to present regarding citizens that officers encounter, whether through traffic stops or dispatch or any other means, and explain how such demographic data is recorded, maintained, and/or reported to other agencies (and identify the agencies to which it is reported)." ECF No. 38-1 at 5.

why not.[2] This question treads much of the same ground as Interrogatory No. 13 in Plaintiffs' First Set of Discovery Requests to the Officer Defendants.[3] The court thus finds that Judge Bennett's ruling was not clearly erroneous or contrary to law.

**C. Interrogatories Nos. 17, 18, and 20**

Interrogatories Nos. 17, 18, and 20 each seek information from 2018 through the present. Interrogatory No. 17 seeks information on all incidents in which UPD officers conducted warrantless searches in that time period, Interrogatory No. 18 seeks information on the race of individuals who have been arrested or tased in that time period, and Interrogatory No. 20 seeks information on all incidents in that time period in which UPD officers asked for backup while responding to noise complaints.[4]

Judge Bennett found each to be overbroad and irrelevant. ECF No. 43-1 at 1. Plaintiffs argue that the data they seek would be relevant comparator evidence for their equal protection and

---

[2] Interrogatory No. 16 (to UPD): "Was any internal review or investigation conducted into the officers' conduct at issue in this case (i.e., calling for backup for a noise complaint, warrantless search and entry)? If so, state when and by whom such investigation was done, and the findings and results of the investigation. If not, explain why no investigation was warranted or conducted." ECF No. 38-1 at 5.

[3] Interrogatory No. 13 (to Officer Defendants): "Identify any internal supervisory reviews or investigations conducted regarding your actions during the incident, including the date(s), the scope of the review, the findings, and any corrective measures or disciplinary actions imposed as a result." ECF No. 29-1 at 9.

[4] Interrogatory No. 17 (to UPD): "Describe the circumstances and provide the case numbers for all other incidents in which UPD officers conducted warrantless searches or entries from 2018 to present." ECF No. 38-1 at 5.

Interrogatory No. 18 (to UPD): "For each defendant officer, provide the race of individuals they have arrested or Tased from 2018 to present." ECF No. 38-1 at 5.

Interrogatory No. 20 (to UPD): "Describe the circumstances and provide the case numbers for all other incidents in which UPD officers were called for noise complaints and called for backup, from 2018 to present." ECF No. 38-1 at 6.

Fourth Amendment claims. While the court agrees with Plaintiffs that the substance of these interrogatories may not be categorically irrelevant, the court agrees with Judge Bennett that, as written, the interrogatories are overbroad. For that reason, the court finds that Judge Bennett's ruling was not clearly erroneous or contrary to law.

**D. Request for Production No. 16**

Judge Bennett ruled RFP No. 16 to be irrelevant. ECF No. 43-1 at 1. It seeks all policies, rules, orientation materials, welcome letters, or any other documents provided to officers as part of the hiring process.[5] Plaintiffs claim that this information is important to their assessment of UPD's and each officer's culpability in knowing what rules existed. However, this is a clearly overbroad request, and many of the documents responsive to this request would be irrelevant to the case. Judge Bennett's ruling was proper.

**E. Request for Production No. 17**

Judge Bennett found RFP No. 17 to be duplicative.[6] Plaintiffs object that it is not clear of what it is duplicative. RFP No. 17 is broadly structured and consequently partly duplicative of at least RFP No. 5 in Plaintiffs' First Set of Discovery Requests to the Officer Defendants.[7] Judge Bennett's ruling was thus not clearly erroneous or contrary to law.

---

[5] Request for Production No. 16 (to UPD): "Provide all policies, rules, orientation materials, welcome letters or any other documents provided to officers as part of the hiring process." ECF No. 38-1 at 6.

[6] Request for Production No. 16 (to UPD): "Provide any documentation of discipline of any of the defendant officers for any reason, including but not limited to discipline for the incidents at issue in this case." ECF No. 38-1 at 6.

[7] Request for Production No. 5 (to Officer Defendants): "Produce all documents, reports, or records relating to any prior complaints, internal investigations, or disciplinary actions involving you that pertain to incidents of warrantless entry, use of force, or allegations of racial bias or misconduct." ECF No. 29-1 at 11

**F. Request for Production No. 20**

Judge Bennett found RFP No. 20 to be overbroad. It requested "all training materials on any subject provided to any of the individual defendants in this case from 2017 to present." ECF No. 38-1 at 6. Similar to RFP No. 16, this is a clearly overbroad request. Judge Bennett's ruling was proper.

**G. Request for Production No. 21**

Plaintiffs' last objection with respect to the discovery requests to UPD relates to RFP No. 21. It requested "all documents reviewed or relied upon to answer any of the interrogatories to UPD." ECF No. 38-1 at 6. Judge Bennett ruled it failed to meet the reasonable particularity standard of Federal Rule of Civil Procedure 34.

Plaintiffs argue in response only that the request "is a standard and routine request." ECF No. 44 at 9. But Plaintiffs bear the burden of demonstrating why Judge Bennett's determination that the request was not reasonably particular under Rule 34 was clearly erroneous or contrary to law. They have failed to do so here.

**II. Discovery requests to the Officer Defendants**

The court next turns to the discovery requests to the individual Officer Defendants. The requests to each officer are identical. ECF No. 44 at 5.

**A. Request for Production No. 6**

Judge Bennett found RFP No. 6 to be irrelevant, noting that collection discovery was improper at this stage. RFP No. 6 requests "any insurance policies you own that you expect would cover any judgment against you in this case." ECF No. 38-2 at 11. Plaintiffs argue Rule 26(a)(1)(A)(iv) requires a party to make available for inspection any insurance agreement under which an insurance business may be liable to satisfy all or parts of a possible judgment. Defendants

do not address this RFP in their response to Plaintiffs' objections.

Here, Plaintiffs have met their burden under Rule 72(a) in showing that the Order was contrary to law. The request, while potentially redundant of the Rule 26 initial disclosure requirements, was not irrelevant. To the extent that Defendants have not abided by their Rule 26(a)(1)(A)(iv) obligations by producing any qualifying insurance agreements applicable to an Officer Defendant, the court orders they do so.[8]

**B. Request for Production No. 7**

Judge Bennett held RFP No. 7 violated the Rule 34 reasonable particularity standard. Like RFP No. 21 to UPD, RFP No. 7 to the Officer Defendants seeks all documents relied on in responding to the interrogatories.[9] The court's analysis remains the same here. While such a request may be common, Plaintiffs have not met their burden of demonstrating why Judge Bennett's determination that the request was not reasonably particular under Rule 34 was clearly erroneous or contrary to law.

**C. Request for Production Nos. 8, 9, 10, 11, 13, 14, and 16**

Judge Bennett found RFP Nos. 8, 9, 10, 11, 13, 14, and 16 to be redundant of prior discovery requests.[10] Plaintiff responds that they are not redundant. Having compared each of the

---

[8] UPD has already produced the declarations page of its insurance policy. ECF No. 47 at 11. The court notes that the disclosure of just the declarations page is generally considered insufficient to satisfy a party's obligation under Rule 26. *See Schmidt v. Shifflett*, No. 1:18-CV-00663-KBM-LF, 2019 WL 3573507, at *1 (D.N.M. Aug. 6, 2019).

[9] Request for Production No. 7 (to Officer Defendants): "Produce any documents you relied on in responding to any interrogatory served upon you in this case." ECF No. 38-2 at 11.

[10] Request for Production No. 8 (to Officer Defendants): "Produce all documents, communications, notes, or electronic records reflecting any communications you had on or after October 20, 2019, with any prosecutor concerning Plaintiffs, including the October 20, 2019 incident, their eviction, or any related criminal or civil proceedings." ECF No. 38-2 at 11.

new RFPs to the prior requests (specifically RFP Nos. 1, 2, 3, and 5 in the First Set of RFPs to the Officer Defendants),[11] the court finds that Judge Bennett's rulings were not clearly erroneous or

---

Request for Production No. 9 (to Officer Defendants): "Produce all documents reflecting any internal affairs or supervisory review, investigation, or performance evaluation that refers or relates to the October 20, 2019 incident and your conduct during that incident." ECF No. 38-2 at 11.

Request for Production No. 10 (to Officer Defendants): "Produce your complete personnel file maintained by UPD or any prior law-enforcement employer, including but not limited to performance evaluations, commendations, reprimands, disciplinary records, training records, and any documents referring to your integrity, truthfulness, use of force, warrantless entry, or racial bias." ECF No. 38-2 at 11–12.

Request for Production No. 11 (to Officer Defendants): "Produce all documents reflecting any citizen complaints, internal investigations, or notices of claim involving allegations that you engaged in discrimination, dishonesty, excessive force, warrantless entry, or destruction of evidence at any time during your law-enforcement employment." ECF No. 38-2 at 12.

Request for Production No. 13 (to Officer Defendants): "Produce all diagrams, sketches, photographs, or other visual materials you created or used to depict the scene, balcony, fence, or interior of Plaintiffs' residence in connection with any investigation, report, training, debriefing, or litigation regarding the October 20, 2019 incident." ECF No. 38-2 at 12.

Request for Production No. 14 (to Officer Defendants): "Produce all policies, directives, training materials, or guidance in your possession, custody, or control that address how officers should respond to noise complaints, including when to call for backup, when to attempt entry, and how to handle situations where occupants decline to come outside." ECF No. 38-2 at 12.

Request for Production No. 16 (to Officer Defendants): "Produce all documents in your possession, custody, or control that reflect any discussion, instruction, or decision regarding the preservation, seizure, deletion, or non-collection of video created by Plaintiffs or their guests on the night of October 20, 2019." ECF No. 38-2 at 13.

[11] Request for Production No. 1 (to Officer Defendants): "Produce all documents, including incident reports, field notes, recordings, and any electronic records or communications that you created or contributed to regarding the incident at the Plaintiffs' residence on October 20, 2019." ECF No. 29-1 at 11.

Request for Production No. 2 (to Officer Defendants): "Produce all training materials, departmental policies, procedural manuals, and other documents provided to you that relate to the use of force, warrantless entry, and the handling of noise complaints in effect on or before October 20, 2019." ECF No. 29-1 at 11.

Request for Production No. 3 (to Officer Defendants): "Produce all communications—whether by radio, email, text message, or other mean between you and any other officer, supervisor, or official

contrary to law. While the new requests are at times broader than the prior requests, Judge Bennett properly acted within his discretion to deny the new requests as largely or significantly redundant or duplicative. As stated, he was not obliged to tailor Plaintiffs' requests to be appropriate.

**D. Request for Production No. 15**

Judge Bennett found RFP No. 15, which requested "all documents reflecting any litigation holds, preservation notices, or instructions you received concerning preservation of documents related to the October 20, 2019 incident," to be irrelevant and discovery about discovery. ECF No. 38-2 at 12. Plaintiffs' objection simply notes their disagreement with this decision. *See* ECF No. 4 at 10. Plaintiffs have not demonstrated why Judge Bennett's decision should be considered clearly erroneous or contrary to law.

**E. Request for Production No. 17**

Judge Bennett found RFP No. 17 to be irrelevant. RFP No. 17 requests "all documents, communications, notes, or electronic records reflecting any communications you had after October 20, 2019, with any representative, manager, or employee of the apartment complex concerning Plaintiffs, including the October 20, 2019 incident, their eviction, or any related criminal or civil proceedings." ECF No. 38-2 at 13. Plaintiffs allege this information "may bear directly on whether and which Defendants caused or contributed to the eviction and resulting damages." ECF No. 44 at 11. Defendants argue that Plaintiffs cannot justify expansive discovery by ambiguous or

---

concerning the decision-making process and your actions before, during, and after the incident on October 20, 2019." ECF No. 29-1 at 11.

Request for Production No. 5 (to Officer Defendants): "Produce all documents, reports, or records relating to any prior complaints, internal investigations, or disciplinary actions involving you that pertain to incidents of warrantless entry, use of force, or allegations of racial bias or misconduct." ECF No. 29-1 at 11.

contradicted claims. *See* ECF No. 47 at 7–8.

The court finds that Judge Bennett's ruling was not clearly erroneous or contrary to law. While Judge Bennett relied on a relevance rationale, the court finds the request significantly duplicative of prior requests. Specifically, Plaintiffs have already requested all communications that the Officer Defendants created relating to the October 20, 2019 incident. *See* ECF No. 29-1 at 10 (RFP No. 1 to the Officer Defendants). The documents responsive to this request would therefore be responsive to the prior request.

**F. Interrogatory No. 17**

Judge Bennett denied the motion to compel a response to Interrogatory No. 17, finding it to be premature collection discovery. Similar to RFP No. 6, it seeks information on insurance policies that could be used to cover any judgment in the case.[12] The interrogatory also seeks information on any liquid or non-liquid assets that could do the same. Plaintiffs argue that the insurance policy information is relevant for the same reasons as was RFP No. 6—namely, Rule 26(a)(1)(A)(iv). Plaintiffs also argue that the information on current assets is relevant because Plaintiffs seek punitive damages for their § 1983 claim.

In support of their objection, Plaintiffs point to a prior ruling by Judge Bennett in which he allowed pretrial discovery of financial information. *See Cartwright v. Hoodoo Land Holdings*, No. 2:24-CV-00376-TS-JCB, 2026 WL 45202, at *4 (D. Utah Jan. 7, 2026). Ultimately, Plaintiffs object to Judge Bennett's ruling as "being directly contrary to his ruling in *Cartwright*." ECF No. 44 at 11.

[12] Interrogatory No. 17 (to Officer Defendants): "Identify any insurance policies, or liquid or non-liquid assets you have that could be used to cover any judgment against you in this case." ECF No. 38-2 at 5.

But as Judge Bennett noted in *Cartwright*, "courts are divided as to the procedural point at which financial information is discoverable." *Cartwright*, No. 2:24-CV-00376-TS-JCB, 2026 WL 45202, at *3. With no controlling precedent, Judge Bennett finding that Plaintiffs' was request premature was not contrary to law. Moreover, his prior ruling in a case with different facts and claims is not binding on his discovery rulings here. In addition, Judge Bennett had no obligation to excise the faulty portion out of Plaintiffs' overall discovery request, so the court affirms his complete ruling on Interrogatory No. 17.

**G. Interrogatory No. 18**

Judge Bennett found Interrogatory No. 18 to be irrelevant and partially redundant of Interrogatory No. 3 in Plaintiffs' First Set of Interrogatories to the Officer Defendants. Interrogatory No. 18 asks the Officers to describe in detail "any communications you had after October 20, 2019, concerning Plaintiffs with any prosecutor or any representative, manager, or employee of the apartment complex where the incidents at issue in this case occurred . . . ."[13] ECF No. 38-2 at 5.

While Judge Bennett relied in part on a relevance rationale, the court finds his ruling justified as Interrogatory No. 18 is partly duplicative of prior requests. Specifically, Plaintiffs have already requested all communications the Officer Defendants created relating to the October 20, 2019 incident. *See* ECF No. 29-1 at 10 (RFP No. 1 to the Officer Defendants). Plaintiffs have also

[13] Interrogatory No. 18 (to Officer Defendants): "Describe in detail any communications you had after October 20, 2019, concerning Plaintiffs with any prosecutor or any representative, manager, or employee of the apartment complex where the incidents at issue in this case occurred, including communications regarding the incident at Plaintiffs' residence; any eviction proceedings against Plaintiffs; and/or any civil or criminal proceedings arising from the incident. For each communication, identify all participants, the date, the medium (in-person, phone, email, text, report, etc.), and the substance of what was discussed." ECF No. 38-2 at 5.

already asked for descriptions of all communications that the Officers had before, during, and after the incident with any officials, which would partly cover this request. *See* ECF No. 29-1 at 6 (Interrogatory 3 to the Officer Defendants). The court thus finds that Judge Bennett's ruling was not clearly erroneous or contrary to law.

**H. Interrogatory No. 20**

Judge Bennett found Interrogatory No. 20 to be irrelevant and redundant of Interrogatory No. 11 in Plaintiffs' First Set of Interrogatories to the Officer Defendants. Interrogatory No. 20 asks for descriptions of every time the officer responded to a noise complaint from 2014 through present in which there was warrantless or forced entry.[14] Plaintiffs argue it should be allowed as relevant to the claims.

The court agrees it is duplicative of Interrogatory No. 11, which sought information on prior incidents of warrantless entry.[15] The court also finds it overbroad.

---

[14] Interrogatory No. 20 (to Officer Defendants): "Identify and describe in detail every instance, in the five (5) years preceding October 20, 2019 and from that date to the present, in which you responded to a noise complaint at a residence or apartment complex and:

a. You did not obtain a warrant;

b. You did not receive consent to enter; and

c. Nevertheless entered or attempted to enter the residence.

For each such incident, identify the date, location, race/ethnicity of the involved occupants to the extent known or recorded, whether backup was called, and whether any arrests, citations, or uses of force occurred." ECF No. 38-2 at 5–6.

[15] Interrogatory No. 20 (to Officer Defendants): "State whether you have ever been involved in an incident or received a complaint similar to the present matter regarding warrantless entry, use of force, or allegations of racial bias; if so, describe the nature of the incident or complaint, any subsequent internal investigations, and the outcome or disciplinary action taken." ECF No. 38-2 at 8–9.

**I. Interrogatory No. 21**

Judge Bennett found Interrogatory No. 21 to be redundant of Interrogatory No. 3 in Plaintiffs' First Set of Interrogatories to the Officer Defendants. Interrogatory No. 21 seeks information on any directives, instructions, or advice that any officer received after the incident relating to the incident report, evidence, or litigation.[16] Plaintiffs disagree that it is redundant.

The court agrees that Interrogatory No. 21 is largely duplicative of Interrogatory No. 3,[17] which asked for descriptions of all communications that the Officers had before, during, and after the incident with any officer, supervisor, or official. The court thus finds that Judge Bennett's ruling was not clearly erroneous or contrary to law.

**J. Interrogatory No. 29**

Finally, Judge Bennett held that Interrogatory No. 29 was overbroad, redundant of Interrogatory No. 11, and irrelevant. Interrogatory No. 29 asks the officer to "identify all other incidents (other than the incidents at issue in this case) in which you personally have entered a

---

[16] Interrogatory No. 21 (to Officer Defendants): "Identify all written, electronic, or oral directives, instructions, or advice you received after the incident from any UPD supervisor, union representative, risk-management representative, or other official regarding documenting the events at issue in this case, including:

a. What to include or omit in any report or statement about the incident;

b. Whether and how to preserve or collect video or electronic evidence; and

c. How to respond to internal investigations, citizen complaints, or litigation related to this incident.

For each responsive communication, identify the person providing the directive, the date, the medium, and the substance of the directive." ECF No. 38-2 at 6.

[17] Interrogatory No. 3 (to Officer Defendants): "Identify and describe all communications (including radio transmissions, emails, text messages, and handwritten or electronic notes) that you had with any other officer, supervisor, or official before, during, or after the incident, specifying the date, time, and substance of each communication." ECF No. 29-1 at 6.

home without a warrant, and describe the circumstances of and basis for your warrantless entry, all citizens involved in the incident, and the date of the incident." ECF No. 38-2 at 8.

The court agrees it is duplicative of Interrogatory No. 11, which sought information on prior incidents of warrantless entry.[18] The court also finds it overbroad. Judge Bennett's ruling was not clearly erroneous or contrary to law.

## CONCLUSION AND ORDER

Beyond RFP No. 6 to the Officer Defendants, Plaintiffs have not met their burden under Rule 72(a) to show that Judge Bennett's denials were clearly erroneous or contrary to law. The court also affirms Judge Bennett's decision to not award reasonable expenses pursuant to Federal Rule of Civil Procedure 37(a)(5)(C). For the above reasons, the court **AFFIRMS IN PART** and **SETS ASIDE IN PART** the magistrate judge's June 10, 2026 Order.

Signed August 18, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge

[18] Interrogatory No. 11 (to Officer Defendants): "State whether you have ever been involved in an incident or received a complaint similar to the present matter regarding warrantless entry, use of force, or allegations of racial bias; if so, describe the nature of the incident or complaint, any subsequent internal investigations, and the outcome or disciplinary action taken." ECF No. 29-1 at 8–9.